In the Matter of the Estate of FREDERICK A. COLLINS, Deceased. FREDERICK A. COLLINS, JR., et al., Individually and as Executors of FREDERICK A. COLLINS, Deceased, Appellants-Respondents; LUCIA B. COLLINS, Respondent-Appellant.

First Department, November 27, 1962.

*Philip Feldman* of counsel (*M. James Spitzer* with him on the brief; *Reich, Spitzer & Feldman,* attorneys), for appellants-respondents.

*Philip Handelman* of counsel (*Robert M. Trien* with him on the brief), for respondent-appellant.

STEVENS, J. These are cross appeals from a decree entered February 2, 1962. Petitioners appeal to the extent that the decree adjudged respondent to be the widow of decedent and directed payment to her of the $1,000 exemption with interest, together with costs and disbursements. Respondent appealed from said decree insofar as it adjudged respondent has no rights under paragraph " SECOND " of the will, limited her recovery of costs and disbursements to $1,379.52, and failed to include any allowance for counsel fees.

Also brought up for review is an intermediate order relieving respondent of her default in answering a notice to admit facts pursuant to section 322 of the Civil Practice Act.

Considering first the intermediate order, it was respondent's contention that there was an oral agreement or stipulation extending respondent's time to respond to the petitioners' request for admission. Petitioners denied that an extension had been granted. It was within the province of the Surrogate to decide which version should be given credence, and in his power to relieve respondent of her default.

This proceeding was initiated in 1959 to determine the status of respondent, that is, whether she was the widow of decedent. Respondent had been married three times before her marriage to decedent. Two of such marriages had been dissolved by divorce and one by death. Respondent and decedent were married March 7, 1953. At the time of decedent's death there was a pending action for separation, brought by respondent, in

which decedent had counterclaimed for annulment. The will was executed after the parties separated and while the separation action was pending. The petitioners contended the marriage was invalid because of a prior existing marriage to one Twining. They asserted that a Georgia divorce decree, obtained by respondent in 1931, was jurisdictionally defective, because respondent did not satisfy the Georgia requirement of one year's continuous residence prior to the filing of the application for divorce. The husband was served by publication and did not appear. Under these circumstances the executors may attack, collaterally, the validity of the decree (*Matter of Bourne,* 2 A D 2d 896) and the Surrogate properly so held (*Matter of Collins,* 25 Misc 2d 886).

The evidence revealed respondent lived in Georgia all of her life until her marriage in 1921 to Twining, a native of North Carolina. In 1922 respondent and Twining moved to Georgia where they lived together until at least June, 1931. Petitioners claimed that in June, 1931, the Twinings moved to North Carolina and although respondent returned to Georgia in August, 1931, and filed for divorce in September, 1931, the stay in North Carolina was an interruption of the required one year's continuous residence. Respondent testified she and Twining always vacationed in North Carolina and the trip to North Carolina in June, 1931 was the customary vacation trip. It was for the trier of the facts to resolve the issue.

While respondent's testimony was somewhat contradictory of an earlier deposition, the Surrogate correctly held petitioners did not meet their burden of establishing the Twining divorce decree to be jurisdictionally defective, and did not adduce sufficient probative evidence to overcome the presumption of validity which attaches to a judgment of a sister State.

As widow respondent is entitled to the $1,000 exemption (Surrogate's Ct. Act, § 200).

On a prior appeal this court, for reasons stated in its opinion, held respondent as alleged widow of decedent '' is barred of a right of election under section 18 of the Decedent Estate Law to take against the will of decedent '' (*Matter of Collins,* 12 A D 2d 307, 310, motion for leave to appeal denied 13 A D 2d 653, appeal dismissed 9 N Y 2d 902). Such determination is the law of this case as to any claimed right of election by respondent.

On this appeal respondent asserts that by reason of the language of paragraph second of the will, she is entitled to the trust referred to therein. This paragraph provides: '' second: In the event that lucia baldwin collins survives me and in the event that it be determined that she has a right of election against

or in absence of testamentary provision for her benefit in this my last Will and Testament, which I believe is not the case, and only in such events, I give, devise and bequeath to my Executors hereinafter named an amount equal to her share of my estate as in intestacy, as defined in Section 18 of the Decedent Estate Law, IN TRUST, nevertheless, for and during her life, to invest the fund and keep it invested in such securities only as are authorized by law for the investment of trust funds, and to pay the income derived therefrom to her for and during her natural life; and upon her death to divide and pay over and I give, devise and bequeath the principal to my sons FREDERICK ARTHUR COLLINS, JR. and HUNT TURNER COLLINS, share and share alike, and, should either of them not be living upon her death, I give, devise and bequeath such portion thereof as he would have taken if living to his issue living upon the termination of the trust, share and share alike per stirpes et non per capita.''

Respondent contends the trust bequest under the will was conditioned solely on a determination of her status as decedent's lawful widow, and it was not necessary under the language of paragraph SECOND to actually exercise a right of election in order to become entitled to such bequest. She seeks to support this position by the selection and the omission of certain words in paragraph SECOND, so as to develop a phrase which reads '' in the event that it be determined that she has a right of election * * * which I believe is not the case,'' and the argument that once she is determined to be the widow an amount equal to her share as in intestacy is automatically given in trust for her.

The right of election is a statutory personal right (Decedent Estate Law, § 18). While the status of surviving spouse is a condition precedent to its exercise, the benefit flowing therefrom can accrue to such spouse only if there is compliance with the requirements of the statute. Here there was no such compliance and the make-weight argument of respondent finds support neither in the record nor in the law. Paragraph SECOND of the will refers to section 18 of the Decedent Estate Law, and the language appearing therein may reasonably be construed not only to establish the quantum of the estate which the widow might receive, but also to condition its availability upon compliance with the statutory requirements.

It is within the discretion of the Surrogate, pursuant to section 278 of the Surrogate's Court Act, to allow or refuse to allow counsel fees. It is not an abuse of discretion to deny counsel fees where, as here, the Surrogate determined services of respondent's counsel did not aid the court in any construction

problem, or benefit the estate (*Matter of Dickinson,* 10 Misc 2d 280). This proceeding was instituted by petitioners to determine the status of respondent, not to construe a will. Moreover, the failure of respondent to attempt to exercise a right of election rendered the issue of construction academic (cf. *Matter of Liberman,* 6 N Y 2d 525, 530; *Matter of Seyfried,* 176 Misc. 759). Where the services rendered by respondent's counsel have to do with status, not will construction, fees are properly denied (*Matter of del Drago,* 178 Misc. 325, affd. 264 App. Div. 718, affd. 289 N. Y. 601). Any construction here was incidental to the resolution of the status of respondent, and not necessarily a part of the proceeding.

The Surrogate also had ample authority under section 278 of the Surrogate's Court Act to allow costs in his discretion (*Matter of Reimers,* 264 N. Y. 62) and the allowance of interest was proper, for exempt property vests in a surviving spouse at date of death (*Matter of Di Prato,* 15 Misc 2d 571; Surrogate's Ct. Act, § 200; cf. *Matter of Manchester,* 279 App. Div. 254).

Accordingly, the decree so far as appealed from by the respective parties should be affirmed in all respects, with costs to the executors, payable out of the estate.

EAGER, J. (dissenting). The court is unanimously agreed that the matter of the construction of paragraph SECOND of the testator's last will and testament is open for consideration at this time. We are not in agreement, however, as to the proper interpretation of and the effect to be given the said paragraph.

The said SECOND paragraph reads as follows: "SECOND: In the event that LUCIA BALDWIN COLLINS survives me and in the event that it be determined that she has a right of election against or in absence of testamentary provision for her benefit in this my last Will and Testament, which I believe is not the case, and only in such events, I give, devise and bequeath to my Executors hereinafter named an amount equal to her share of my estate as in intestacy, as defined in Section 18 of the Decedent Estate Law, IN TRUST, nevertheless, for and during her life, to invest the fund and keep it invested in such securities only as are authorized by law for the investment of trust funds, and to pay the income derived therefrom to her for and during her natural life; and upon her death to divide and pay over and I give, devise and bequeath the principal to my sons FREDERICK ARTHUR COLLINS, JR. and HUNT TURNER COLLINS, share and share alike, and, should either of them not be living upon her death, I give, devise and bequeath such portion thereof as he would have taken if living to his issue living upon the termination of the trust, share and share alike per stirpes et non per capita."

It having been determined that the respondent was duly married to, and is the widow of, the testator, thus having as of the time of his death a right of election against his will, I reach the conclusion that she is entitled to the trust benefits set up by the said SECOND paragraph; and that she did not forfeit her rights thereunder by her action or inaction after the testator's death.

The widow's right of election was a present right, vested as of the date of testator's death, to be exercised on the probate of his will; and as to this there can be and is no question. (See Decedent Estate Law, § 18.) On the other hand, upon the probate of his will, she also had a right by virtue of the terms thereof, to forego her right of election and to take under the will in lieu of taking against it. The choice was hers, alone, to make. Her right to elect against the will was a "personal right" (see Decedent Estate Law, § 18) and she alone could enforce or waive it.

If the widow so chose, she was entitled, on the probate of the will, to claim the trust benefits provided for her by said paragraph SECOND. She could have said to the executor, "I waive my right of election and I want what the will gives me in lieu thereof"; and, then, she would be entitled to take under the will. Even if she had duly filed a notice of election she would have been entitled as a matter of right to timely withdraw the same and to take the trust benefits. (*Matter of Allan,* 5 N Y 2d 333.)

So, clearly, it was the absolute right of the widow, exercisable on probate of the testator's will, either to take as the trust beneficiary under his will or to take, as against the will, her intestate share in his estate. To take the intestate share in lieu of the trust benefits, it was necessary that she timely proceed with a notice of election as provided by statute. But, as we have determined on a prior appeal, she failed to so proceed and thereby her right to take against the will was barred. The effect of this determination, however, was merely to preclude her from taking "her share of my estate as in intestacy" as provided by the will. See section 18. It should not and does not bar her from testamentary rights which were vested in her on the death of the testator.

Under the construction adopted by the majority, the testamentary provisions for the benefit of the widow, instead of being vested, were determined to be contingent upon her duly perfecting a right of election to take against these very provisions. To so hold, flies in the face of the cardinal rule of construction that, absent the expression of a contrary intent, a will is to be con-

strued as speaking from the date of death of the testator and not in the light of events occurring subsequent thereto. That the testator here was speaking of existing conditions and not in the light of what might happen after his death is clear from his use of the words in the present tense. The use of the word "has" in the phrase "that she has a right of election" and the use of the word "is" in the phrase "which I believe is not the case" indicate that the testator had in mind a present state of affairs and therefore, such words are referable to the time when the will speaks, namely, the time of death.

In fact, the construction laid down by the majority has the tendency to nullify the particular provisions of paragraph SECOND. To hold that the widow must have duly exercised her right of election in order to take under these provisions renders them ineffective for any purpose. Under such construction, the widow, having a right of election, would not take under the will under any circumstances. She would not take if she failed to exercise such right; and, of course, she would not take under the will if she did exercise such right for then she would take her intestate share. Thus, clearly, such a construction, anomalous in effect and having the result of depriving the widow of any and all interest in the estate of the decedent, should be avoided.

It is all very well to read between the lines and look to the extrinsic circumstances, and then to say that one is convinced that the testator did not intend to have his widow take any part of his estate. But we are bound by and should give effect to the will as it is written. Here, the testator's language merely indicated that he wanted to reduce the respondent's share in his estate as his widow to the minimum allowed by law; and we should not be constrained by the extrinsic circumstances to rewrite the will in a manner to entirely cut off the widow from sharing in the testator's estate.

In view of the foregoing, I would hold that the respondent widow is entitled to the trust benefits provided by paragraph SECOND of the testator's last will and testament and I would accordingly modify the decree appealed from and the decree of August 3, 1960.

BREITEL, J. P., and VALENTE, J., concur with STEVENS, J.; EAGER, J., dissents in opinion in which McNALLY, J., concurs.

Decree, so far as appealed from by the respective parties, affirmed in all respects, with costs to the executors, payable out of the estate.